# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM FOSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-CV-423-GKF-TLW |
| ) | |
| PPG INDUSTRIES, INC., a corporation, and ) | |
| PPG INDUSTRIES EMPLOYEE SAVINGS ) | |
| PLAN, an ERISA plan, ) | |
| ) | |
| Defendants/Third-Party ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| PATRICIA FOSTER, ) | |
| ) | |
| Third-Party Defendant. ) | |

## OPINION AND ORDER

This matter comes before the Court for determination of plaintiff's claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1101, *et seq.* ("ERISA").

## Background

Plaintiff William Foster ("Foster") worked for defendant PPG Industries, Inc. ("PPG") from October 1988 to October 1999, and participated in the PPG Industries Employee Savings Plan, a 401k pension plan (the "Plan"). The Plan requires each participant and beneficiary to keep the Plan Administrator advised of his correct address. (AR 446). From 1993 until his divorce in 2004, Foster and his wife Patricia resided at 12401 East 33rd Place, in Tulsa, Oklahoma. At all times relevant to this dispute, Foster's marital residence was listed as Foster's permanent address in the Plan's files. (AR 0450). Foster received Plan-related documents at this address, including documents notifying him that he must notify the Plan of any change to his mailing address. (AR 438; AR 434 (Letter dated March 22, 2000); AR 455-56 (sections of Summary Plan Description ("SPD") instructing a

participant upon divorce, moving, or termination to make sure current address is on file at the Savings Plan Service Center); AR 416 (acknowledging receipt of SPD)).

Foster's divorce was finalized by a decree entered on July 27, 2004 (AR 0385; AR 0447-49); Foster had moved out of the marital residence before that date. (AR 0436; 0414). Foster never advised defendants that he had moved out of the marital residence or that his mailing address had changed. Foster has admitted that he did nothing to stop defendants from sending his private information to the marital residence. (AR 0438; AR 0440).

In early 2005, defendants mailed a document to Foster at the permanent address listed in their records. The documents described changes in the way Plan participants would access their Savings Plan accounts. (AR 0460-0463). Among other things, it explained that a User ID created by the participant would replace the participant's Social Security number for identification purposes. (AR 0461). Patricia received this document. (AR 0387, 0389). Patricia then made an online request to replace Foster's Social Security number with a new User ID. (AR 0389). On April 26, 2005, in accordance with the Plan's security measures, defendants sent confirmation of the new User ID and a temporary password to Foster's listed permanent address. (AR 0389, 409, 450). On May 8, 2005, Patricia changed the password, established a User ID for Foster's account, changed the permanent address on the account to a P.O. Box, and made a withdrawal of $4,000.00 from the account. The money was electronically deposited into an account at the Bank of Oklahoma. (AR 0389, 0412, 0450). Over the next several months, Patricia withdrew all the available funds–a total of $42,126.38.

In January of 2006, Foster received a 1099-R form from Fidelity Investments showing a gross distribution of $42, 126.38 from the Plan in 2005. On May 30, 2006, Foster demanded defendants replace the money taken by Patricia. (AR 0464). By letter dated May 31, 2006, the Plan

Administrator determined the Plan was not liable for Foster's loss. (AR 0469). Following this court's Order remanding the matter to the Plan Administrator, [Dkt. ## 63, 66], the Administrator denied Foster's claim (AR 514-15). The Administrator based his denial on the fact that (1) the Plan had in place all the necessary and proper security measures, (2) the benefits were paid in accordance with all Plan terms and requirements, and (3) Foster's loss of benefits was due to his own failure to notify the Plan of any change of address and the fraudulent conduct of Ms. Foster. (AR 0514).

Foster contends that the Plan has wrongfully denied his claim that defendants must replace the funds taken by Patricia. He asks this court to order defendants to compensate him for his loss. In addition, he seeks to enforce penalties against the Plan for its alleged failure to provide certain documentation requested by Foster during the course of this dispute.

## I. Denial of Benefits

Turning first to Foster's claim that he was wrongfully denied benefits, the court notes that, in this case, the Plan granted its administrator complete authority to determine eligibility for benefits, to construe the terms of the Plan, and to control and manage the Plan's operations. When such discretionary authority is granted, "we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1361 (10th Cir. 2009) (citations and quotation marks omitted); *cf. Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948 (1989) ("we hold that a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan").[1] However, if, as here, the administrator is "operating under a conflict of interest, that conflict

---

[1] Foster does not dispute the grant of authority to the Plan Administrator. *See* AR 0443 § 15.2; AR 0457. Instead, he cites *Kellogg v. Metropolitan Life Insurance Company*, 549 F.3d 818 (10th Cir. 2008), for the proposition that "[w]here there has not been compliance with the

3

must be weighed as a factor in determining whether there is an abuse of discretion." *Scruggs*, 585 F.3d at 1361 (quoting *Metro Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2348 (2008)).[2]

When reviewing an administrator's decision to deny benefits, the court will "consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary and capricious." *Id.* at 1362 (internal quotation marks and citation omitted). The court will "make that determination based on the language of the plan." *Id.* (citation omitted). Where, as here, the "administrator's decision relies on an interpretation of the language of the plan," the court must determine "whether the provision is ambiguous; if the plan documents, examined as a whole, are unambiguous, [the court] construe[s] them as a matter of law." *Id.* (internal quotation marks and citations omitted). "If the language is ambiguous, then [the court] must take a hard look and determine whether [the Plan Administrator's] decision was arbitrary in light of its conflict of interest." *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1011 (10th Cir. 2008) (internal quotation marks and citation omitted); *Scruggs*, 585 F.3d at 1362. Although the arbitrary and capricious standard of review will apply, the level of deference will be reduced to account for the gravity of the conflict. *Weber*, 541 F.3d at 1010 (internal quotation and citation omitted); *Metro. Life. Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2351-52 (2008)

---

administrative review procedures, the standard of review is *de novo*." [Dkt. # 75, at 4-5]. Foster contends PPG failed to comply with the administrative review procedures by not including in its adverse notification a "reference to the specific plan provisions on which the determination is based" or "a description of the plan's review procedures" as required by 29 C.F.R. §§ 2560.503-1(g)(1)(ii), (iv). However, *Kellogg* does not support Foster's proposition; in that case the court addressed the applicable standard of review when an administrator fails to issue a decision; because the defendant failed to issue a decision during the review period, the court applied *de novo* review to the defendant's initial decision. Foster does not contend the Plan administrator failed to render a decision within a deadline required by ERISA or its regulations.

[2] The parties agree that PPG funds and administers the Plan and that this presents a conflict of interest.

(explaining that a conflict of interest will prove more or less important depending on the conflict's magnitude).  However, "if the plan documents, examined as a whole, are unambiguous," the court will "construe them as a matter of law." *Scruggs*, 585 F.3d at 1362 (internal quotation marks and citation omitted).  If "the plan administrator's interpretation differs from the unambiguous meaning, then the plan administrator's interpretation is unreasonable, and the decision to deny benefits based on that interpretation is arbitrary and capricious." *Id.* at 1362-63 (internal quotation marks and citation omitted).[3]

Foster maintains that, because he has been "promised a defined pension benefit upon retirement" and "has fulfilled [the] conditions . . . required to obtain [that] benefit," he is entitled to the actual receipt of the promised benefit. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510 (1981).  Foster contends that, by virtue of his years of service, his benefits were vested and are "nonforfeitable" as defined in 29 U.S.C. § 1002(19).[4]  Therefore, he claims, he may enforce his "unconditional" right to his benefits against the Plan.

There is no dispute that Foster's benefits vested upon the termination of his employment.  However, in contending his benefits are "unconditional" and "legally enforceable against the plan," Foster misapprehends the context in which Congress endowed vested benefits with nonforfeitable status.  Congress intended to protect workers from the risk of terminated or under-funded plans by

---

[3] In reviewing a plan administrator's decision for abuse of discretion, federal courts are limited to the administrative record–the materials compiled by the administrator in the course of making his decision. *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002).  As to Foster's claim of wrongful denial of benefits, the scope of this court's review extends to the Joint Administrative Record submitted by the parties.  [Dkt. ## 73-74].

[4] 29 U.S.C. § 1002(19) provides, in pertinent part, that "[t]he term 'nonforfeitable' when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan."

5

ensuring that "if a worker has been promised a defined pension benefit upon retirement–*and if he has fulfilled whatever conditions are required to obtain a vested benefit*–he actually will receive it." *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 375, 100 S.Ct. 1723 (1980) (emphasis added); *see Alessi*, 451 U.S. at 510 n. 5. Thus, Congress provided workers with legally enforceable rights against benefit plans that cannot be avoided on account of plan termination or inadequate assets. There is no indication Congress intended to impose upon plans the obligations of an insurer against any and all wrongful actions by third parties. Thus, the fact that Foster has not received his benefits is insufficient in itself to allow him recovery against the Plan.

Foster next contends that defendants violated Section 11.2(a) of the Plan, which provides that, "[u]pon a Participant's Termination of Employment, other than by reason of death, the distribution shall be paid to the Participant in a lump sum." (AR 0096). Section 11.2 applies only to lump-sum distributions upon termination. Foster did not elect to receive a lump sum distribution, but instead opted to defer receipt of his benefits in favor of later withdrawals. Defendants submit, and Foster does not dispute, that sections 10.3 and 10.4 of the Plan govern deferred receipt of vested benefits. Section 10.4 provides that all withdrawals by a participant who defers receipt of his account, "shall be made in accordance with procedures established by the Administrator." According to defendants, these procedures are as follows: (1) the participant must provide the Plan an updated mailing address, *see* Plan, AR 0446; SPD, AR 0455-56; (2) new PIN numbers are sent to the address on file, *see* SPD, AR 0454-56; and (3) withdrawals can be made electronically using confidential information that is sent only to the participant at the address on file, *see* AR 0270; 0456; 0461-63.

6

Although Foster does not dispute that defendants followed these procedures, Foster contends that these procedures are not contained in the Plan documents, and cannot be enforced against him.[5] Contrary to Foster's assertions, however, the procedures are referenced in various Plan documents, including the SPD,[6] newsletters,[7] and other documents mailed to Foster's listed permanent address. *See* Plan, AR 0446 (obligating each participant and beneficiary to keep the Administrator advised of his current address); SPD, AR 0455-56 (same); SPD, AR 0454-56 (providing that PIN number and Plan correspondence shall be sent to the permanent address on file); AR 0480-81 (permitting electronic access to participant's account using confidential information sent only to the participant's address on file); AR 0270, 0456, 0461-63 (mailing sent to Foster's permanent address on file

---

[5] Foster cites *Cirulis v. UNUM Corp. Severance Plan*, 321 F.3d 1010 (10th Cir. 2003), in support of this proposition. In *Cirulis*, the court found arbitrary and capricious a plan administrator's conditioning of payment of benefits on assent to a provision not on the face of the welfare plan documents. In other words, the administrator denied benefits based on a requirement not found in *any* of the plan documents; the court found this to be improper. This case differs from *Cirulis*, however. As discussed above on this page, the administrative procedures complained of by Foster were included in documents incorporated into the Plan.

[6] "SPDs are considered part of the ERISA plan documents." *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996). Foster generally asserts that an SPD cannot modify or derogate the terms of a written plan. *See* Dkt. # 75 at 8 (citing *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1201 (10th Cir. 1992). But the *McGee* Court ruled that language within a summary booklet created an ambiguity between the booklet and the plan document, and by the plan document's own disclaimer, the plan's language prevailed. The court recognized that "benefits may not be enforced according to a booklet and letter that are inconsistent with the terms of a written ERISA pension plan." Here, Foster does not allege or identify an inconsistency or ambiguity between the Plan and the SPD that would render the terms of the SPD inapplicable. *Id.* (citing *Johnson v. Central States, S.E. & S.W. Areas Pension Funds*, 513 F.2d 1173, 1174-75 (10th Cir. 1975)).

[7] Defendants assert, and Foster does not dispute, that an administrator must provide a summary of material modifications to the plan, but need not republish the SPD every time an amendment is made to the plan. [Dkt. # 76, at 20], *see* 29 U.S.C. §§ 1022(a), 1024(b)(1); 29 C.F.R. § 2520.104b-3(a). It is undisputed that defendants "provide[] the requisite summary of material modifications in the form of its Savings Plan Newsletter (the "Newsletter")," and "[t]he SPD notifies Plan participants that the Newsletter is incorporated by reference as being part of the SPD." *Id.* (citing AR 0452); *see* AR 0149-50; AR 0474.

7

providing information about his account). These documents are "part of the ERISA plan documents," Chiles, 95 F.3d at 1511, and they notified Foster of both the Plan's procedures and his rights and obligations under the Plan. The documents obligated Foster to notify the Plan of any change of address; his failure to comply with these requirements permitted his ex-wife to receive confidential documents relating to his account.

Given the provisions in the Plan documents, this court must affirm the administrator's determination that "[a]ny 'wrongful' payment of Plaintiff's benefits in this instance [was] due only to Plaintiff's failure to notify the Plan of his change of address coupled with the conduct of Plaintiff's ex-wife," and that the Plan is not liable to Foster. The Plan documents, as a whole, are unambiguous, and defendants' construction of the Plan provisions is consistent with the plain meaning of the provisions.[8] Defendant's denial of Foster's claim based on that interpretation was neither arbitrary or capricious. Accordingly, Foster's claim for wrongful denial of benefits must be denied.

## II. Failure to Provide Requested Information

Foster claims defendants failed to provide him with certain information he requested by letter of June 26, 2006. [Dkt. # 75, at 11 (citing 29 U.S.C. § 1132(c))].[9] According to 29 U.S.C. § 1132(c)(1), a court may, in its discretion, hold an administrator personally liable for a penalty of up to $100 per day for refusing or failing to comply with a request for information that the administrator is required to furnish within 30 days of the request. Foster contends that, despite his request for a copy of the SPD and relevant newsletters, the Administrator did not furnish the requested documents

---

[8] This court's decision would not change under a *de novo* standard of review.

[9] In addressing Foster's second claim for failure to timely provide information, this court may consider the evidence relied on by the parties and presented to the court.

in its August 3, 2006 response to Foster's request. As a result, Foster argues, "Defendants are liable for the $100 per day penalty from August 3, 2006, to April 24, 2007." *Id.* at 12.

Although defendants do not dispute that the Administrator did not furnish the SPD or the newsletters in the initial response to Foster's request, they contend they produced the requested information in a timely manner. [Dkt. # 76, at 26]. Defendants also contend that Foster never indicated the information they provided was insufficient or unsatisfactory, and that Foster could easily have contacted the Administrator to request the allegedly missing information. *Id.* (citing AR 432 and *Cytrynbaum v. Empl. Ret. Plan of Amoco Corp. & Participating Cos.*, 338 F. Supp. 2d 1187, 1194 (D. Colo. 2004)). Moreover, defendants contend Foster has not demonstrated prejudice, bad faith, or any other factor justifying imposition of the discretionary penalty award. *Id.* at 25 (quoting *Cytrynbaum*, 338 F. Supp. 2d at 1193-94).

In addressing a claim under § 1132(c)(1), this court "may consider a variety of factors, including whether the untimely production of the requested plan documents prejudiced the participant or was the result of the plan administrator's bad faith." *Cytrynbaum*, 338 F. Supp. 2d at 1193-94 (citing *Deboard v. Sunshine Min. & Refining Co.*, 208 F.3d 1228, 1244 (10th Cir. 2000)); *see Sullivan v. Raytheon Co.*, 262 F.3d 41, 52 (1st Cir. 2001) (no abuse of discretion where district court considered the absence of prejudice and bad faith in declining to award penalties).

Foster does not contend he suffered prejudice, nor does he claim that defendants acted in bad faith. Moreover, he does not point to any other factor or evidence that would justify the imposition of a § 1132(c) penalty. Given the absence of prejudice and bad faith and the evidence that the requested information was ultimately furnished, the court concludes that the evidence presented in this case does not support the imposition of a penalty under § 1132(c). Accordingly, Foster's claim is denied.

## **CONCLUSION**

For these reasons, plaintiff William Foster's claims are denied. The third-party claims against Patricia Foster for indemnity and contribution are therefore moot. A separate judgment shall be entered contemporaneously herewith.

IT IS SO ORDERED this 31st day of August, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma